**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ADEWALE OGUNYALE,**

        **Petitioner,**

v.                                         **Civil Action No. 1:07cv165**
                                            **(Judge Keeley)**

**WAYNE A. PHILLIPS, Warden,**

        **Respondent.**

## REPORT AND RECOMMENDATION

The petitioner initiated this case on November 30, 2007, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 in which he seeks an order directing the Bureau of Prisons ("BOP") to grant him the minimum 10% placement in a Community Correctional Center ("CCC")[1] or, in the alternative, consider him for a full six months placement in a CCC pursuant to the provisions of 18 U.S.C. § 3624(c). The petitioner paid the required filing fee on December 5, 2007.

On December 6, 2007, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time. Consequently, the respondent was directed to show cause why the petition should not be granted. On January 7, 2008, the respondent filed a Motion to Dismiss, and on that same date a Roseboro Notice was issued. On January 25, 2008, the petitioner filed a response and a Motion for Summary Judgment. The case is before the undersigned for a report and recommendation pursuant to LR PL P 83.09, et seq.

---

[1] The BOP now refers to a CCC as a Residential Re-entry Center or RRC. However, for purposes of this Report and Recommendation, the term CCC shall be used.

1

## I. Factual and Procedural History

On July 8, 2004, the petitioner was sentenced in the United States District Court for the District of Columbia to 51 months incarceration for violation of 18 U.S.C. § 201(B)(2)(A), Receipt of Bribe by a Public Official. The petitioner was committed to the custody of the BOP on November 3, 2004. His projected release date, via Good Conduct Time, is July 15, 2008. (Doc. 7-4, p.2).

In the petition, the petitioner asserts that per 28 U.S.C. § 3624(c), on a sentence of 51 months, he should receive a minimum of 5 months in a CCC. The petitioner further alleges that his CCC placement was illegally reduced to 2.5 months. As relief, the petitioner seeks an order directing the BOP to place him in a CCC facility or home confinement for the last 10% of his sentence or that he be considered for the full six months placement.

The respondent contends, however, that the BOP considered the five factors set forth in 18 U.S.C. § 3621(b) without regard to a 10% limitation. Therefore, the Government argues that the petitioner has received the only relief available to him and that there is no live case or controversy remaining.

## II. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that

> a prisoner serving a term of imprisonment spends a reasonable part,
> not to exceed six months, of the last 10 per centum of the term to be
> served under conditions that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the prisoner's re-entry into
> the community. The authority provided by this subsection may be
> used to place a prisoner in home confinement. The United States
> Probation System shall, to the extent practicable, offer assistance
> to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, [2] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment.
> The Bureau may designate any available penal or correctional facility
> that meets minimum standards of health and habitability established
> by the Bureau, whether maintained by the Federal government or
> otherwise and whether within or without the judicial district in which
> the person was convicted, that the Bureau determines to be appropriate
> and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment
> was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as
> appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission

---

[2] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

3

pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

### III. Analysis

**A. Pertinent Caselaw**

The Third Circuit Court of Appeals was the first court of appeals to address the issue raised in the instant case. In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. See Woodall at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. Id. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must

4

consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." Id. at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Id. at 244; see also Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006).

Relying on the clear weight of authority, this District has likewise concluded that the challenged regulations are invalid. See Smith v. Gutierrez, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); Simcoke v. Phillips, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); Jaworski v. Gutierrez, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); Murdock v. Gutierrez, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, D.J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court directing that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Id. Thus, the invalidation of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

Here, the petitioner was initially referred for a March 4, 2008, CCC placement date. However, due to limited bed space, the CCC accepted him for a date of only May 6, 2008, approximately 40 days prior to the end of his sentence. Subsequent to the decisions issued by this Court, the petitioner was re-reviewed and a new CCC referral was made. (Doc. 7-3, p. 3). Based on that review, which considered the five factors, and in consideration of other factors, the petitioner was recommended for placement in a CCC for 90-130 days. (Doc. 11). However, as noted by the petitioner's case manager, Fred J. Caromano, based on the prior decision of the CCC, the petitioner may not get the full amount of time. As further noted by Mr. Caromano, FCI Morgantown cannot dictate to a CCC whether to take an inmate, and if they do take accept the inmate, FCI Morgantown cannot dictate to them the amount of time for which they will accept him. (Doc. 7-3, p.4).

The essence of the petitioner's argument is that he is guaranteed the right to serve, at a minimum, 10% of his sentence in a CCC. However, as to the incarceration, classification and segregation of lawfully convicted prisoners, the Attorney General has complete and absolute discretion. 18 U.S.C. §§ 4081 and 4082. Consistent with this grant of discretion, inmates such as the petitioner have not been guaranteed by statute or regulation the right to early release or involvement in community-based programs. 18 U.S.C. § 3624(c) obligates the BOP to facilitate an inmate's transition from the prison system. Under this statute, the BOP must formulate a plan or pre-release conditions. This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan and addresses the inmate's re-entry into the community. However, the obligation is qualified by the phrase "to the extent practicable." Security concerns or space limitations in a CCC near the inmate's home are among

the factors that may make it impossible to transfer an inmate to a CCC for even part of the transition period. See Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004).

Accordingly, it is clear from the petitioner's most recent CCC referral form that the BOP has complied with the requirements of 18 U.S.C. 3621(b) and has given specific consideration to the five required factors. The fact that the CCC is unable to accept him for the entirety of the recommended range of 90-130 days does not establish a basis for the issuance of a writ.

### IV. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 7) be **GRANTED**, the petitioner's Motion for Summary Judgment (Doc. 13) be **DENIED**, and the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

Within ten (10) days after being served with a copy of this /Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); .

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to

counsel of record via electronic means.

DATED: April 7, 2008

  /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE